IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

MARK ALEXANDER RAY,                     )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        CV 625-074
                                        )
JACOB BEASLEY, RODNEY FOULKS,           )
KEENAN CARVER, WILLESHA                 )
WARREN, ASHLEY KENNEDY, and             )
UNIT MANAGER EDWARDS,                   )
                                        )
        Defendants.                     )
                                  _____

**O R D E R**
                                  _____

Plaintiff, incarcerated at Johnson State Prison in Wrightsville, Georgia, filed this case pursuant to 42 U.S.C. § 1983 relating to actions which occurred at Smith State Prison. When he initially filed his complaint, he was *pro se* and requested to proceed *in forma pauperis* ("IFP"). Counsel for Plaintiff has appeared and filed an amended complaint. (Doc. nos. 13, 18.) Pursuant to 28 U.S.C. § 1915A, the Court must review all civil complaints from a prisoner seeking redress from a governmental entity or employee of a governmental entity regardless of whether that prisoner has paid the filing fee or is represented by counsel. See In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir. 1996) (noting that "[d]istricts courts are required to screen [pursuant to §1915A] all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners.").

## I.   FILING FEES AND SUMMONS

On February 25, 2025, the Court directed Plaintiff to pay an initial partial filing fee of $49.93 within thirty days of the date of the Order and advised him that all prisoners, even those proceeding *in forma pauperis*, must pay the filing fee of $350.00 in full.  See 28 U.S.C. § 1915(b)(1).  The time for responding to the Court's February 25th Order has now expired, yet Plaintiff has failed to pay the assessed initial partial filing fee as required by the relevant provisions of the United States Code.

Under the Prison Litigation Reform Act ("PLRA"), prisoners granted *in forma pauperis* status must, when funds are available, prepay at least a partial filing fee.  28 U.S.C. § 1915(b)(1)-(2).  Courts may not except indigent prisoners from prepaying this partial filing fee.  See id.; see also Rivera v. Allin, 144 F.3d 719, 722 (11th Cir. 1998), abrogated on other grounds by Jones v. Bock, 549 U.S. 199 (2007); Martin v. United States, 96 F.3d 853, 856 (7th Cir. 1996) (insisting, whenever feasible, on payment in advance of initial filing fee in every civil action covered by the PLRA).  Thus, Plaintiff shall have fourteen days from the date of this Order to inform the Court of his intentions regarding this case by complying with the Court's Order directing payment of an initial filing fee of $49.93 or by showing the Court why he has not complied with the Order directing the payment.  The **CLERK** is **DIRECTED** to immediately inform the Court of any payment of the initial filing fee which is received from Plaintiff.

If Plaintiff notifies the Court that he has decided not to pursue his case and wishes to voluntarily dismiss his complaint at this time, then the case will not count as a "strike" which may later subject Plaintiff to the three-strike dismissal rule under 28 U.S.C. § 1915(g).  It is

important that Plaintiff communicate with the Court. Failure to pay this fee will result in a recommendation of dismissal.

## II.    SCREENING THE COMPLAINT

### A.    BACKGROUND

In his amended complaint, Plaintiff names as Defendants: (1) Jacob Beasley, the Warden at Smith State Prison; (2) Rodney Foulks, a Deputy Warden Security at Smith State Prison; (3) Keenan Carver, a Deputy Warden Security at Smith State Prison; (4) Willesha Warren, a Deputy Warden of Care and Treatment at Smith State Prison; (5) Ashley Kennedy, a Deputy Warden of Administration at Smith State Prison; and (6) Unit Manager Edwards. (Doc. no. 18, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Smith State Prison experienced significant security failures during Plaintiff's period of incarceration. (Id. at 3-4.) Inmate Antwon Demetrius Strader had a history of multiple violent incidents against cellmates, including prior charges of aggravated assault and a riot in a penal institution. (Id. at 5.) That history was documented in Strader's disciplinary files, prison incident reports, disciplinary hearing records, behavioral assessments, and housing assignment records maintained by Smith State Prison and the Georgia Department of Corrections. (Id.) Despite knowledge of Strader's history against his cellmates, Defendants assigned him to share a cell with Strader in lockdown unit H2-126 at Smith State Prison. (Id. at 6.) Defendants took no measures to ensure his safety and did not notify him of Strader's violent history, offer him alternative housing options, increase monitoring or supervision of the cell, or separate Strader from the general population. (Id.)

3

Strader attacked Plaintiff inside their cell on September 29, 2024, with a homemade knife. (Id.) Strader stabbed Plaintiff approximately twenty times and Plaintiff suffered life-threatening injuries including a concussion, a partially crushed trachea, a collapsed lung, and a carotid artery injury. (Id.) These injuries were so severe that Plaintiff was transported to Savanna Trauma Center where he stayed from September 29 through October 2, 2024, recovering from his injuries. (Id.)

Upon his return to prison, Plaintiff requested grievance forms but was repeatedly told that no forms were available. (Id. at 6.) He finally obtained a grievance form on November 19, 2024, whereupon he completed and submitted it. (Id.) That grievance was denied at the institutional level on the ground that it was untimely filed. (Id.) Plaintiff appealed that decision to the Warden where it was denied for the same reason. (Id. at 7.) Plaintiff appealed that decision on December 18, 2024. (Id.) He then submitted an appeal to the Central Office of the Georgia Department of Correction which, again, denied him on the ground that his grievance was untimely filed. (Id.)

Plaintiff filed this suit on September 24, 2025. (Doc. no. 1.) He neither paid the filing fee nor sought leave to proceed IFP at that time. On October 21, 2025, he filed a motion to proceed IFP, and the Court granted that motion directing Plaintiff to return his PLRA forms and to file an Amended Complaint. (Doc. no. 5.) He returned some of his forms on December 1, 2025, and filed an Amended Complaint. (Doc. nos. 6-8.) The Court received the remainder of his forms on February 24, 2026, (doc. no. 16) and on February 25, 2026, directed Plaintiff to pay an initial filing fee of $49.93 within 30 days (doc. no. 17). In the meantime, counsel appeared for Plaintiff on January 22, 2026, (doc. no. 13) and filed a Second Amended Complaint on March 26, 2026 (doc. no. 18).

**B.** **DISCUSSION**

**1.** **Exhaustion**

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012) (per curiam) (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted).  It is well settled that the PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  Prisoners are not usually required to plead exhaustion, see Jones v. Bock, 549 U.S. 199, 216 (2007); instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]"  Id.

This case is unusual in that Plaintiff has affirmatively noted he was unable to timely exhaust his administrative remedies.  (Doc. no. 18, pp. 6-7.)  However, Plaintiff also asserts he repeatedly requested grievance forms and prison officials denied him access to those forms.  (Id. at 6.)  As a result, he alleges the grievance procedure was unavailable to him.  Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (noting that "once [the defendant's] burden has been met, the burden of going forward shifts to the plaintiff, who . . .must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him."); see Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'  [Cit.]  Remedies that rational

inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.") (citations omitted).  Some courts have recognized that "a prisoner who is injured or undergoing significant medical treatment faces a substantial obstacle to making use of administrative remedies, and if the prison will not accommodate such injury or medical treatment but will treat the grievance as untimely, administrative remedies become effectively unavailable." Rucker v. Giffen, 997 F.3d 88, 94 (2d Cir. 2021).  Because Plaintiff has provided details regarding his failure to exhaust and given that the failure to exhaust is an affirmative defense, the Court declines to dismiss his Amended Complaint for failure to exhaust his administrative remedies.  To be clear, the Court makes no determination regarding whether Plaintiff's failure to grieve was excusable or whether exhaustion was unavailable to him.  Defendants retain the burden to prove Plaintiff did not exhaust his available remedies.

### 2.    Legal Standard for Screening

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A. Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1278-79 (11th Cir. 2001).  As a result, the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to the plaintiff.  See Bumpus v. Watts, 448 F. App'x 3, 4 n.1 (11th Cir. 2011) (per curiam).  Conclusory allegations that are nothing more that "[t]hreadbare recitals of elements of a cause of action," however, fail.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  If the facts in the Complaint do not state a claim for relief that is plausible on its face, the Court may dismiss the Complaint.  Id.; see also Bumpus, 448 F. App'x at 5 n.1; 28 U.S.C. §1915A(b)(1).

6

### 3.    Plaintiff's Amended Complaint States a Deliberate Indifference to his Safety Claim

To succeed on an Eighth Amendment deliberate-indifference claim, a plaintiff-inmate must show: (1) that the alleged deprivation is, "objectively, 'sufficiently serious,'" and (2) that defendant-official acted with "subjective recklessness as used in the criminal law." Farmer v. Brennan, 511 U.S. 825, 834, 839 (1994) (internal citations omitted). "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotes and cites omitted). However, "[p]rison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). The Eleventh Circuit has clarified that, to establish subjective recklessness, the plaintiff must show "that the defendant was actually, subjectively aware that his own conduct," whether action or inaction, "caused a substantial risk of serious harm to the plaintiff." Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024). Moreover, in the context of a failure-to-protect claim, the threat must rise to the level of "a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." Brown, 894 F.2d at 1537 (internal quotation marks and citation omitted). Generalized "risk" of altercations between prisoners is not sufficient. As this Court has observed: "Prisons are dangerous places because they are filled with people society has already deemed too dangerous to live amongst law abiding persons. Prisoners will always be at some risk of harm simply by being surrounded by these people. [Cit.] To trigger a failure-to-protect claim, a plaintiff must allege that the threat rose above the background danger." Goodson v. Benton, 2020 WL 975089, at *2 (S.D. Ga. Jan. 16, 2020) (citations omitted).

As this Court has explained, "[a]mple case law in this Circuit makes clear a plaintiff may show a substantial risk of serious harm in the context of establishing personal liability for failure to protect under either a particularized threat or a dangerous conditions theory . . . ." Hakeem v. Adams, 2025 WL 918169, at *5 (S.D. Ga. Mar. 26, 2025).  Plaintiff asserts both sorts of claim.  He alleges both that Smith State Prison was violent *and* that Strader had a history of violent assaults against previous cellmates.  (Doc. no. 18, pp. 1-5.)  He claims first that Smith State Prison "experienced repeated incidents of extreme violence," noting that "[i]n 2023, seven inmates and one corrections officer were killed in homicides at Smith State Prison."  (Id. at 4.)  He states "Smith State Prison was so inadequately staffed that Prison officials used "stand-ins" to act like they were working as guards during particular shifts when in fact they were not."  (Id. at 4.)  Plaintiff alleges all defendants were aware of these conditions, including the history of violence and security failures, and failed to address these concerns.  (Id.)  As a result, his dangerous conditions claim is viable at this stage.  See Hakeem, 2025 WL 918169 at *6 ("Under the dangerous conditions theory, a plaintiff need only show the prison official 'had subjective knowledge of a generalized, substantial risk of serious harm from inmate violence.'" ).

Plaintiff also details Strader's history of violence against cellmates and alleges his history was recorded and documented.  (Doc. no. 18, p. 4.)  Finally, Plaintiff asserts Defendants Foulks and Carver had actual knowledge of Strader's security and disciplinary files, as well as his danger to his cell mates, and placed him with Strader despite knowing his violent tendencies.  (Id. at 5.)  He also alleges Defendant Unit Manager Edwards had direct knowledge of Strader's placement with him and did nothing to protect him from his cellmate.  (Id.)  At

this stage, these allegations are sufficient to allow these claims to proceed against Defendants Foulks, Carver, and Edwards.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff is **DIRECTED** to either pay the $49.93 partial filing fee or inform the Court why no payment has been received within fourteen days from the date of this Order.  Failure to either pay or respond to this Court's Order will result in a recommendation of dismissal.

SO ORDERED this 9th day of April, 2026, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

9